FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

AO 240 (Rev. 07/10) Application to Proceed in District Court Without Prepaying Fees or Costs (Short Form)

# UNITED STATES DISTRICT COURT
for the
Eastern District of Arkansas

JAN 3 1 2020

JAMES W. McCORMACK, CLERK
By: _____
DEP CLERK

| Barbara Jones | ) |
|---|---|
| *Plaintiff/Petitioner* | ) |
| v. | ) Civil Action No. 3:20-CV-00037 DPM |
| Poinsett County Housing Authority | ) |
| *Defendant/Respondent* | ) |

## APPLICATION TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS
(Short Form)

I am a plaintiff or petitioner in this case and declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief requested.

In support of this application, I answer the following questions under penalty of perjury:

1. *If incarcerated.* I am being held at: _____ .
If employed there, or have an account in the institution, I have attached to this document a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months for any institutional account in my name. I am also submitting a similar statement from any other institution where I was incarcerated during the last six months.

2. *If not incarcerated.* If I am employed, my employer's name and address are:

Barnhills Restaurant, 1111 S. Caraway Rd., Jonesboro, AR, 72401
Burger King, 2925 Red Wolf Blvd., Jonesboro, AR, 72401

My gross pay or wages are: $ 500.00 , and my take-home pay or wages are: $ 420.00 per
*(specify pay period)* week .

3. *Other Income.* In the past 12 months, I have received income from the following sources *(check all that apply)*:

| | | |
|---|---|---|
| (a) Business, profession, or other self-employment | ☐ Yes | ☐ No |
| (b) Rent payments, interest, or dividends | ☐ Yes | ☐ No |
| (c) Pension, annuity, or life insurance payments | ☐ Yes | ☐ No |
| (d) Disability, or worker's compensation payments | ☐ Yes | ☐ No |
| (e) Gifts, or inheritances | ☐ Yes | ☐ No |
| (f) Any other sources | ☑ Yes | ☐ No |

*If you answered "Yes" to any question above, describe below or on separate pages each source of money and state the amount that you received and what you expect to receive in the future.*

Child support for one child, $400 per month
Help from adult son, $200 per month

AO 240 (Rev. 07/10) Application to Proceed in District Court Without Prepaying Fees or Costs (Short Form)

    4. Amount of money that I have in cash or in a checking or savings account:  $ _____0.00_____ .

    5. Any automobile, real estate, stock, bond, security, trust, jewelry, art work, or other financial instrument or thing of value that I own, including any item of value held in someone else's name *(describe the property and its approximate value)*:

I have one car. I took a loan out to buy it and make payments every month. I believe the car has around $1,500 to $2,000 of equity.

    6. Any housing, transportation, utilities, or loan payments, or other regular monthly expenses *(describe and provide the amount of the monthly expense)*:

Car payment: $375, Car Insurance: $150, Gas: $120
Rent: $375, Light: $90, Water: $45, Household Supplies: $30
Food: $500, Medicine: $15, Hygiene and Self-Care Products: $50
Phones: $100
School Supplies: $15
Clothes/Shoes for Self and Children: $100

    7. Names (or, if under 18, initials only) of all persons who are dependent on me for support, my relationship with each person, and how much I contribute to their support:

D.J., 13 years old; he lives with me, and I support him fully (I receive child support for D.J.)
K.T., 16 years old; she lives with me, and I support her fully (I do NOT receive child support for K.T.)

    8. Any debts or financial obligations *(describe the amounts owed and to whom they are payable)*:

Nothing other than my car note

    *Declaration:*  I declare under penalty of perjury that the above information is true and understand that a false statement may result in a dismissal of my claims.

Date: Jan 31 2020

_____
*Applicant's signature*

Barbara Jones
*Printed name*

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 3 1 2020

JAMES W. McCORMACK, CLERK
By: _____
                              DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**BARBARA JONES**                      **PLAINTIFF**

v.           Case No. 3:20 - cv - 00037 DPM

**POINSETT COUNTY**
**HOUSING AUTHORITY**                **DEFENDANT**

This case assigned to District Judge Marshall
and to Magistrate Judge Volpe

## COMPLAINT

Plaintiff Barbara Jones states the following in support of this Complaint against the Poinsett County Housing Authority:

### I. PRELIMINARY STATEMENT

1. Barbara Jones worked diligently as a maintenance worker for the Poinsett County Housing Authority from August 2018 until she was fired in March 2019 for being a woman who dressed in an insufficiently feminine manner for her supervisors' stereotypes.

2. From the beginning of her employment, Ms. Jones dressed properly for the requirements of her job. Where she had discretion in her appearance, she favored baseball caps, earrings, watches, boots, and hairstyles her supervisors associated with men's fashion and appearance.

3. For two separate time periods, Ms. Jones' immediate supervisors harassed her about her appearance with cruel actions and insulting, angry comments. They insisted that she change her appearance if she wanted to continue working for the Housing Authority. When she refused, the Housing Authority fired her. Ms. Jones had an exemplary attendance record and had never been disciplined for any reason.

4. Ms. Jones alleges that her discharge constituted sex discrimination in violation of Title VII of the U.S. Civil Rights Act ("Title VII") and Ark. Code Ann. § 16-123-107. Because of the hostile work environment, Ms. Jones suffered repeated embarrassment and hurt. Because of her unlawful termination, Ms. Jones suffered embarrassment and hurt, lost wages while she was unemployed, and lost wages because subsequent employment has paid significantly less. She seeks damages, reinstatement, injunctive relief, and declaratory relief.

## II. JURISDICTION

5. The jurisdiction of the Court over this controversy is invoked pursuant to 28 U.S.C. §§ 1331 (federal question), 1343(a)(4) (damages), 1367 (supplemental jurisdiction over state statutory claim), 2201 (declaratory relief), and 2202 (same), and 42 U.S.C. §§ 2000e-5 (Title VII).

## III. VENUE

6. The venue of this action is appropriately in the Eastern District of Arkansas pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events that gave rise to these claims occurred within this judicial district. In addition, the unlawful employment practice occurred in the state of Arkansas, rendering venue appropriate pursuant to 42 U.S.C. § 2000e-5(f)(3).

## IV. PARTIES

7. Ms. Jones is a citizen of the United States and a resident of Arkansas. She was an employee the Poinsett County Housing Authority during all periods relevant to the claims for relief made in this Complaint. She receives mail and resides at 219 12th St., Apartment B, Marked Tree, Arkansas, 72365.

8. The Poinsett County Housing Authority, with its main office at 1104 Elm St., Marked Tree, Arkansas, 72365, is a municipal corporation doing business in the state of

Arkansas. The Housing Authority employed Ms. Jones from approximately August 2018 through March 2019. At all relevant times, the Housing Authority employed at least 15 people and met the definition of "employer" provided in Title VII and Ark. Code Ann. § 16-123-107. The Housing Authority's executive director is Wixson Huffstetler.

### V. EXHAUSTION OF ADMINISTRATIVE REQUIREMENTS

9. Prior to filing this action, Ms. Jones timely filed her written charge with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of sex. The EEOC issued a right-to-sue letter on November 5, 2019 (attached to this Complaint). The present lawsuit is filed on January 31, 2020, within the required time limits.

### VI. FACTS

10. The Housing Authority operates low-income housing units to residents of Poinsett County through different complexes located in Marked Tree, Lepanto, Wiener, Fisher, and Harrisburg. Shonda Barrios, a site manager, assumed the duties of executive director while the Housing Authority did not have someone permanent as executive director, a period that lasted from roughly July 2018 until February 1, 2019. Afterwards, she continued to work for the Housing Authority in the role of site manager.

11. Ms. Jones applied for a job as a Housing Authority maintenance worker in July 2018, was hired by Barrios, and started working in late July or early August 2018. Ms. Jones would go to different Housing Authority complexes based on whatever the needs of the Housing Authority were on a particular day. Her standard tasks including changing electrical outlets and light switches, painting, patching holes, hanging blinds, and cleaning. She also operated power tools, including an electric sander. Ms. Jones was capable of performing each of these tasks

based on knowledge she had from before starting work at the Housing Authority and from on-the-job experience and training.

12. Ms. Jones earned $11.50 per hour for about 40 hours per week. Her regular schedule was Monday through Friday from 8 a.m. to 5 p.m. with about eight daily hours of paid work. Each day, she received a 15-minute break around 10 a.m. and lunch around noon.

13. The Housing Authority required that all employees wear a Housing Authority t-shirt and pants suitable for the work activities, which Ms. Jones did every day. Beyond that, employees had discretion about their appearance so long as there was nothing with obscene language or vulgar graphics. Ms. Jones favored baseball caps, earrings, watches, boots, and hairstyles that her supervisors associated with men's fashion and appearance. Ms. Jones did not wear anything with obscene language or vulgar graphics.

14. The Housing Authority never claimed that Ms. Jones' appearance violated any policy. The Housing Authority never offered any legitimate business reason to object to her appearance.

15. When Ms. Jones started, her direct supervisor was the Housing Authority's maintenance supervisor Franky Williams. Referring to Ms. Jones' choice of clothing and accessories he associated with men, Williams stated that he did not like that she dressed "like that" and harassed her as a result. He would slam doors in her face, turn the lights off in rooms where she was, and steal her timecard. Williams' comments and actions hurt and embarrassed Ms. Jones. After Ms. Jones complained in October 2018 to Barrios, who was still fulfilling the duties of executive director, the harassment temporarily lessened.

16. Around February 1, 2019, Wixson Huffstetler became the executive director of the Housing Authority. Huffstetler's previous employer, the Jonesboro Department of Parks and Recreation, had suspended him without pay for two weeks in 2016 for discriminatory attitudes.

17. Somewhere between February 10 and 20, 2019, Mr. Huffstetler spoke with Ms. Jones and told her that she should not be dressing like a man. This comment hurt and embarrassed Ms. Jones.

18. Around March 1, 2019, Frank Marrs, Huffstetler's friend and subordinate from Jonesboro Department of Parks and Recreation, became the supervisor of the maintenance team, reporting directly to Huffstetler. Marrs became Ms. Jones' direct supervisor.

19. Around March 7, 2019, Marrs asked Ms. Jones in front of a group of maintenance employees why she liked to dress like a man, wear boxer shorts like a man, and wear boots like a man. These questions—and the group environment in which Marrs asked them—hurt and embarrassed Ms. Jones.

20. Around March 12, 2019, Huffstetler confronted Ms. Jones when she went into the office in Marked Tree covered in paint. He asked Ms. Jones why she liked to dress like a man. He told Ms. Jones that she is not supposed to dress "like that" and that she is a girl and is not supposed to have paint on her. He stated that Ms. Jones would no longer be allowed to paint or change electrical outlets. He told Ms. Jones that she would be allowed only to clean. He was angry and spoke in a loud voice through the conversation, sometimes shouting. At the end, he told Ms. Jones that she was a good worker and could continue working in the same job if she changed the way she dressed. This conversation hurt and embarrassed Ms. Jones.

21. A few days after March 12, 2019, Marrs confronted Ms. Jones when she went into the Marked Tree office to get supplies needed to fix a unit. Marrs told Ms. Jones that she could

not come into the office "like that," that she had to dress appropriately for a woman, and that he and Huffstetler did not like the way she was dressing. This conversation hurt and embarrassed Ms. Jones.

22. Around March 19, 2019, Marrs told Ms. Jones that he did not want her coming to work dressed in men's clothes and accessories. After lunch, he told her that she could not come back to work because she was wearing "those earrings and that hat" and further stated, "I don't want to see that." Marrs told Ms. Jones that she could not come into work the next day.

23. Later on the same day, Ms. Jones called Huffstetler to see if he would allow her to return to work. Huffstetler stated that he did not approve of the way Ms. Jones dressed and that she would have to do whatever Marrs ordered.

24. The following day, March 20, 2019, Ms. Jones stayed home because of Marrs' order. Ms. Jones called various Housing Authority employees to let them know. Before the close of business, Marrs called Ms. Jones to tell her to come into the office the next day, March 21, 2019, and that it would be her last day.

25. On March 21, 2019, Ms. Jones went to the office as requested. Prior to giving Ms. Jones a termination letter, Marrs told Ms. Jones that she could keep her job if she changed her appearance to dress in a manner that Marrs and Huffstetler considered appropriate for women. When Ms. Jones refused to do so, Marrs gave Ms. Jones a letter stating that she was terminated because she was "not a good fit for the maintenance team we are trying to build." The term "not a good fit" referred to Ms. Jones' choices regarding her appearance.

26. Prior to terminating Ms. Jones, the Housing Authority had never disciplined Ms. Jones in writing, told her that she was not doing her job well, told her that she was not qualified for her job, informed her that she was violating any kind of company policy, placed her on

probation, or placed her on a reduced schedule. Feedback she received on her performance was positive, including check-ups of her work in each apartment unit before a new tenant moved in.

27.   Ms. Jones complied fully with the Housing Authority's absence and tardiness policies.

28.   On information and belief subject to confirmation after an opportunity for discovery,

(a)   the Housing Authority posted a job opening for and hired someone new to fill Ms. Jones' position within two weeks of her discharge;

(b)   the new employee performed the same job duties as Ms. Jones; and

(c)   the new employee conformed to Huffstetler's and Marrs' stereotypes about sex.

## VII. CLAIMS FOR RELIEF

### First Claim: Violation of Title VII for Termination

29.   Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 28 of this Complaint.

30.   Ms. Jones was a member of a protected class because she is a woman and alleging sex discrimination.

31.   Ms. Jones was capable of performing the job, as evidenced by her regular ongoing performance without any kind of discipline or warnings about unsatisfactory performance.

32.   Ms. Jones experienced an adverse employment action when the Housing Authority subjected her to ridicule, restricted her job duties, and terminated her.

33.   Substantiated by the factual allegations in this Complaint, Ms. Jones experienced discrimination on the basis of sex in violation of Title VII for not conforming to stereotypes

about her appearance and dress, justifying an award of back pay, front pay, interest, benefits, special damages, compensatory damages, and punitive damages.

### Second Claim: Violation of Title VII for Hostile Work Environment

34. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 33 of this Complaint.

35. Ms. Jones was subjected to unwelcome harassment on the basis of sex through the series of actions taken and statements made by superiors throughout the course of her employment because she did not dress according to their expectations of a woman, most notably from August 2018 through October 2018 and from February 2019 through March 2019.

36. The harassment affected a term, condition, or privilege of her employment when she faced hostile statements and actions not faced by other employees, when she was hurt and embarrassed by the hostile statements and actions, when Huffstetler restricted her work activities, when she was sent home early and forbidden to come to work the following day, and when the Housing Authority terminated her employment.

37. The Housing Authority knew of the harassment because Ms. Jones initially reported harassment by Williams in October 2018 to Barrios and because supervisors Huffstetler and Marrs were the individuals perpetrating the harassment.

38. The Housing Authority failed to take proper action to stop the harassment and, instead, perpetrated further harassment through the actions of its supervisors.

39. The actions and statements of Huffstetler, Marrs, and Williams demonstrated a general and pervasive hostility towards a woman who does not dress and present according to their stereotypes of a woman.

### Third Claim: Violation of Ark. Code Ann. § 16-123-107

40. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 39 of this Complaint.

41. Substantiated by the factual allegations in this Complaint, Ms. Jones experienced discrimination on the basis of gender in violation of Ark. Code Ann. § 16-123-107 for not conforming to stereotypes about her appearance and dress, justifying an award of back pay, front pay, interest, benefits, special damages, compensatory damages, and punitive damages.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Ms. Jones respectfully prays for judgment against the Defendant as follows:

(a) For a money judgment to be determined at trial representing compensatory and consequential damages, including lost wages, past and future wages, all other sums of money, including the value of all benefits and interest on said amounts, and emotional distress;

(b) For a money judgment to be determined at trial representing punitive damages for the Defendant's malice and its reckless indifference to Ms. Jones' rights;

(c) For a money judgment representing pre- judgment and post-judgment interest at the highest lawful rate;

(d) For reinstatement and restoration of benefits upon conditions that Ms. Jones be assigned to a placement that will not subject her to discriminatory treatment or retaliation for filing this Complaint;

(e) That this Court retain jurisdiction over this action until the Defendant has fully complied with the orders of this Court;

(f) That this Court require the Defendant to file reports necessary to supervise compliance with law and that all matters related be done in conformance with the applicable Title VII and state law provisions;

(g) For the costs of suit, including expert fees, and an award of attorneys' fees;

(h) For a permanent injunction enjoying the Defendant from denying and violating the rights of employees secured by Title VII and relevant Arkansas state law;

(i) For a declaratory judgment that the acts of the Defendant violate Title VII and relevant Arkansas state law; and

(j) For all other just and proper relief.

**DATED:** January 31, 2020

Respectfully Submitted,

*/s/ Trevor Hawkins*
Trevor Hawkins

Kevin De Liban (2012044)
kdeliban@arlegalaid.org
LEGAL AID OF ARKANSAS
310 Mid-Continent Plaza, Suite 420
West Memphis, AR 72301
P: (800) 967-9224 x. 2206
F: (870) 732-6373

Trevor Hawkins (2017224)
thawkins@arlegalaid.org
LEGAL AID OF ARKANSAS
714 S. Main St.
Jonesboro, AR 72401
P: (800) 967-9224 x. 6313
F: (870) 910-5562

*Attorneys for Plaintiff*

EEOC Form 161 (11/16)   **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | **Barbara Jones**<br>219 12th Street<br>Apt. B<br>Marked Tree, AR 72365 | From: | **Little Rock Area Office**<br>820 Louisiana<br>Suite 200<br>Little Rock, AR 72201 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 493-2019-01863 | **Chris E. Stafford,**<br>**Investigator** | **(501) 324-5812** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

**- NOTICE OF SUIT RIGHTS -**
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_[signature]_
**William A. Cash, Jr.,**
**Area Office Director**

NOV 0 5 2019
(Date Mailed)

Enclosures(s)

cc: **Shonda Barrios**
Office
**POINSETT COUNTY HOUSING AUTH.**
1104 Elm Street
Marked Tree, AR 72365

**Kevin De Liban**
**LEGAL AID OF ARKANSAS**
310 Mid Continent Plaza
Suite 420
West Memphis, AR 72301

**Missy Mcjunkins Duke**
Cross, Gunter, Witherspoon
500 President Clinton Avenue, ste200
Little Rock, AR 72201